388 So.2d 1167 (1980)
AMSTAR CORPORATION
v.
Joseph GERACE, Administrator, State of Louisiana, Department of Employment Security, and Leonard J. Babin, Lanny R. Creppel, Donald J. Forrest, Claire K. McDonough, Raymond P. McGee, Earl P. McManus, Larry L. Roberts, Emile L. Schenck, John L. Vinet, Samuel Wall, James P. Wood, James R. Lipps, Warren R. Lotz, Arthur H. Meyers, Kevin Thompson.
No. 10871.
Court of Appeal of Louisiana, Fourth Circuit.
September 9, 1980.
*1168 Chaffe, McCall, Phillips, Toler & Sarpy, G. Phillip Shuler and David L. McComb, New Orleans, for plaintiff-appellant.
James A. McGraw and Willie D. Maynor, Baton Rouge, for defendants-appellees.
Before SAMUEL, REDMANN and BOUTALL, JJ.
SAMUEL, Judge.
Plaintiff, Amstar Corporation, a large refiner of sugar operating a refinery at Chalmette, Louisiana, had three collective bargaining agreements with three union locals. One of these agreements was with the Amalgamated Meat Cutters & Butcher Workmen of North America Local P-1101 (herein referred to as Meat Cutters), representing the largest number of employees, plaintiff's production and maintenance workers; another was with the International Association of Machinists and Aerospace Workers Local 37, representing plaintiff's machinists; and the third was with Teamsters Local 270, which represented plaintiff's laboratory employees. All three agreements expired on February 1, 1975.
Following continued unsuccessful negotiations between plaintiff and the Meat Cutters, on February 13, 1976 that union went on strike and established a picket line around the refinery. The machinists and laboratory employees did not strike. However, members of those unions did not cross the picket line, nor did they attempt to do so, and they did not report for work until after the Meat Cutters' strike was settled; they reported for work on the same day the members of the Meat Cutters returned to work. The strike ended March 12, 1976 when plaintiff and the Meat Cutters reached a new bargaining agreement.
During the strike members of the machinists and laboratory locals applied for unemployment compensation benefits for wages lost while the strike was in progress.[1] Initially they were found eligible to receive, i. e., not disqualified from receiving, those benefits by the Louisiana Department of Employment Security, and plaintiff appealed to the appeals tribunal of the Department. The appeals referee also held the claimants were not disqualified, a holding based on his findings that the labor dispute between the Meat Cutters and plaintiff resulted in there being no work available for the defendants, that the defendants were not members of the striking union, and that they were not participating in the labor dispute.
Plaintiff appealed to the Department's Board of Review, which affirmed the decision of the appeals referee without comment. Plaintiff then appealed to the district court for judicial review of the Board's determination. Following a hearing, that *1169 court affirmed the decision of the Board, and plaintiff has appealed to this court from that judgment.[2]
In this court plaintiff contends the defendants were disqualified from receiving unemployment compensation benefits under R.S. 23:1601(4). We agree with the contention and, accordingly, reverse.
The controlling law is contained in R.S. 23:1634, which in pertinent part reads, "In any proceeding under this Section [Judicial review; procedure] the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.", and R.S. 23:1601(4) which, also in pertinent part, provides:
"An individual shall be disqualified for benefits:
(4) For any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment." LSA-R.S. 1601(4).
The finding of the Board of Review that the labor dispute between the Meat Cutters and plaintiff resulted in there being no work available for the defendants during the Meat Cutters' strike is not supported by sufficient evidence within the meaning and intent of the above quoted sentence from R.S. 23:1634.[3] As established by the testimony of plaintiff's witnesses such work was available. That testimony describes the available work in detail, laboratory work within the normal job duties of laboratory workers, such as the making of standard solutions, calibration of instruments, tests involving air pollutants, the water discharge system, and stored products, and cleaning and inventory of laboratory equipment, and regular machinists work such as repairing and overhauling pumps and various mechanical equipment. The only evidence contained in the record which even suggests work was not available is hearsay to the effect that the defendants, or some of them, thought there would be no work because of the strike.
The above quoted portion of R.S. 23:1601(4) clearly provides that a worker is disqualified for benefits when his unemployment is due to a labor dispute in active progress; and the only exception thereto is that the disqualification does not apply if it is shown "that he is not participating in or interested in the labor dispute which caused [the] unemployment." Thus, in order to avoid disqualification in this case the burden of proof was on the defendants to show their absence of participation or interest in the Meat Cutters' strike.[4] They have failed to carry that burden, probably as to an absence of participation and certainly as to an absence of interest. We find a consideration of the question of participation unnecessary because the defendants offered no evidence showing or tending to show an absence of interest in the strike on their *1170 part, and under the statute interest in the labor dispute, by itself, is sufficient for disqualification.
Although work was available, plaintiff had not informed the defendants they were to report for work as it was customary for the defendants to report on a daily basis without being told by the plaintiff that they were needed (in fact as to laboratory workers a schedule of work had been posted prior to the time the strike was called). As we have said, the defendants simply did not report for work nor did they make any effort to so report. In addition, the record fails to reveal that any of the defendants made a valid attempt to determine whether or not work was available for them. And the record reveals, totally without contradiction, that as a matter of uniform precedent over several years no negotiations took place between plaintiff and the two locals of which defendants were members until after plaintiff and the Meat Cutters had reached an agreement. Following such an agreement with the Meat Cutters, both other locals always have agreed to the identical percentage wage increase agreed to by plaintiff and the Meat Cutters. Thus, the machine shop and laboratory employees stood to gain through a successful Meat Cutters' strike, and the maximum success of that strike was enhanced by a complete shutdown of the refinery. Not only have the defendants failed to carry their burden of proof, our reading of the record convinces us they had an interest in the strike in suit, and in its outcome, within the meaning of the word "interest" as used in R.S. 23:1601(4).
For the reasons assigned, it is ordered that the judgment appealed from be reversed and that there be judgment in favor of the plaintiff, Amstar Corporation, and against all of the individual defendants, declaring said defendants ineligible to receive unemployment compensation benefits.
REVERSED.
NOTES
[1] The Meat Cutters, who did not apply, clearly would not have been eligible under the provisions of R.S. 23:1601(4).
[2] The two basic groups of defendants, machinists and laboratory workers, were heard separately by the appeals referee on the same day. Each group consented to be collectively represented by its own representative. Only one of the affected employees testified at each hearing, and it was stipulated that the decision of all would be based on the same administrative record. The union representatives and some plaintiff officials also testified. The record before us includes this testimony and each defendant's application for benefits on forms supplied by the Department.
[3] "Sufficient evidence" as contained in the statute means legal, competent evidence and hearsay is not "sufficient evidence." Evans v. State, Department of Employment Security, La. App., 292 So.2d 265; Jackson v. Doyal, La. App., 198 So.2d 469; Hall v. Doyal, La.App., 191 So.2d 349; Gardere v. Brown, La.App., 170 So.2d 758.
[4] Senegal v. Lake Charles Stevedores, Inc., La., 197 So.2d 638; Elmer Candy Corp. v. Administrator of Employ. Sec., La.App., 286 So.2d 423; Handyman Homes, Inc. v. Administrator, D. of Emp. S., La.App., 192 So.2d 827; Brown v. Brown, La.App., 158 So.2d 305.