415 So.2d 625 (1982)
VANCOUVER PLYWOOD CO., INC., Plaintiff-Appellant,
v.
Herbert L. SUMRALL, Administrator of the Office of Employment Security, and Wanda J. Bridwell, Defendants-Appellees.
No. 8826.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
*626 Smitherman, Lunn, Hussey & Chastain, W. James Hill, III, Shreveport, for plaintiff-appellant.
Avant, Wall, Thomas, Riche & Falcon by Randall G. Wells, James A. McGraw, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, CUTRER and SWIFT, JJ.
SWIFT, Judge.
In this and four other consolidated cases Vancouver Plywood Company, Inc., (Vancouver) seeks judicial review of awards of unemployment compensation benefits to five of its former employees under the Louisiana Employment Security Law. LSA-R.S. 23:1471 et seq. This case, bearing our No. 8826, involves the claim of Wanda J. Bridwell. The others concern those of Louis E. Milem, Terry J. Procell, Lutrisa Gasaway and Laverne Penegar.[1] The issues in all suits are identical and will be covered in one opinion. However, separate decrees will be rendered in each case.
These and a number of other unemployment compensation claims asserted against Vancouver were originally denied by the agency for the following reasons:
"You refused recall to work with your last employer. You have not furnished this office with any reason/any valid reason for your refusal. You refused recall to suitable work without good cause."
The claimants timely appealed their disqualifications and after a joint hearing the appeals referee reversed such determinations. Vancouver then appealed to the Louisiana Board of Review which affirmed the decision of the appeals referee. Petitions for judicial review were filed in the Eleventh Judicial District Court for Sabine Parish, Louisiana, where the claimants reside. Peremptory exceptions of no cause of action were sustained by the trial judge. Motions for a new trial were denied and Vancouver has perfected these devolutive appeals.
We will first address the question of whether the trial court correctly sustained the exceptions of no cause of action.
The function of a peremptory exception of no cause of action is to test the sufficiency in law of the petition. In the case of Guillory v. Nicklos Oil and Gas Company, 315 So.2d 878 (La.App. 3 Cir. 1975) this court stated:
"The peremptory exception of no cause of action C.C.P. art. 927(4) questions whether the law affords any remedy to the plaintiff under the allegations of his petition. No evidence may be introduced to support or controvert an objection that the petition fails to state a cause of action. C.C.P. art. 931. American Creosote Company v. Springer, 257 La. 116, 241 *627 So.2d 510 (1970). The exception is triable solely on the face of the petition. All well pleaded facts in the petition and attached documents must be accepted as true and any doubts must be resolved in favor of the sufficiency of the pleading to state a cause of action. The exception must be overruled unless the allegations affirmatively establish that under no facts admissible under the allegations of the petition does plaintiff have a cause of action. See Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975); Watkins v. Louisiana High School Athletic Ass'n., 301 So.2d 695 (La.App. 3rd Cir. 1974)."
See also Krawfish Kitchen Restaurant, Inc. v. Ardoin, 396 So.2d 990 (La.App. 3 Cir. 1981).
Each of the petitions for judicial review alleges the following facts:
1) That the employee was either a member of the UBC-Southern Council of Industrial Woodworkers of America, AFL-CIO, or received benefits under the collective bargaining agreement between the plaintiff and the union which expired on February 15, 1980.
2) That the union went on strike at the plaintiff's three plants on September 13, 1980, and that the labor dispute was in active progress from that date until October 27, 1980.
3) That the employee participated or was interested in the labor dispute.
4) That prior to the strike the employee had received unemployment benefits from March, 1980, until September 18, 1980.
5) That the plaintiff continued to operate its plants while negotiations were taking place and it notified the employee by letter on September 16, 1980, that work was available and to return to work on September 18, 1980.
6) That the available work was suitable, because it was the same job with the same pay and shift that the employee previously had with Vancouver before being placed on lay-off status.
7) That the employee refused to cross the picket line and his unemployment benefits were terminated on September 18, 1980.
8) That the decision of the Louisiana Board of Review affirming the appeals referee's decision to reverse the disqualification of the employee for unemployment compensation benefits was improper.
The trial court gave no reasons for sustaining the exceptions. However, he evidently shared the view of the administrative agencies that LSA-R.S. 23:1601(3)(b) was applicable to the alleged facts. We disagree.
LSA-R.S. 23:1601(3)(b) states in pertinent parts as follows:
"An individual shall be disqualified for benefits:
* * * * * *
"(3) If the administrator finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the administrator or to accept suitable work when offered him, or to return to his customary selfemployment, if any, when so directed by the administrator.
* * * * * *
"(b) Notwithstanding any other provisions of this Chapter, no work shall be deemed suitable and benefits shall not be denied under this Chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (i) if the position offered is vacant due directly to a strike, lockout, or other labor disputes;" [Emphasis added.]
In the instant case the plaintiff alleged that each claimant was offered and refused the same job with the same pay and shift as he or she had previously had before the March lay-off. Under these allegations the claimants did not refuse to accept "new work", as the statute requires to prevent disqualification if the position offered is vacant due to a labor dispute. Instead, they refused to accept offers of employment of their previous work. Therefore, it is clear that the exception expressed in R.S. 23:1601(3)(b) is not applicable under the facts alleged in plaintiff's petitions.
*628 The subsection that is applicable to the alleged facts is LSA-R.S. 23:1601(4) which provides that an employee is disqualified for such benefits:
"(4) For any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment." [Emphasis added.]
According to the petitions, the claimants previously had been placed on layoff status by Vancouver and were receiving unemployment compensation. However, each was notified by letter about September 16, 1980, that work was available and to return to work on September 18, 1980. The claimants were to be reemployed in their old jobs, but all refused to cross picket lines which were established because of a labor dispute that was in active progress at the plants where the claimants were last employed. It was also alleged that the claimants were either members of the union or received benefits under the collective bargain agreement between it and the company and they participated or were interested in the labor dispute. On the basis of these allegations each claimant was disqualified from receiving unemployment benefits under LSA-R.S. 23:1601(4). Senegal v. Lake Charles Stevedores Inc., 250 La. 623, 197 So.2d 648 (La.1967); and Cities Service v. Admin., La. Dept. of Emp., 383 So.2d 1315 (La.App. 3 Cir. 1980). Therefore, the district court erred in sustaining the exception of no cause of action and should have judicially reviewed the administrative proceedings.
With his answer Herbert L. Sumrall, the Administrator of the Office of Employment Security, has filed in the record a certified copy of the administrative record. Pursuant to LSA-R.S. 23:1634 the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, are conclusive and the jurisdiction of the district court is confined to questions of law. Since the record is complete, we will review it and render judgment in accordance with La.C.C.P. Art. 2164 rather than remand the case for further proceedings.
The appeals referee made the following findings of fact:
"The claimants worked for the named employer for varying lengths of time and in various capacities until they were laid off due to a reduction in force on or about March 28, 1980. All of them were told that they would be contacted and notified when to return to work if work should become available again. On September 13, 1980 a work stoppage occurred at all three locations of the employer's operations (Oakdale, Louisiana, Florien, Louisiana, and Fisher, Louisiana). The employees who were still working for the company put up pickets at all three locations. On September 15, 1980, all of the striking employees and all the employees who were on layoff status were sent certified letters asking them to report for work on September 18, 1980. None of the striking workers reported for work. The claimants were not made aware of what jobs were to be available to them, what shifts they might be working or what their rates of pay would be. A few of the claimants contacted the employer, but most of them did not. The employer tried to contact all of the claimants by telephone to see if they were returning to work. The personnel office was able to contact some of them, but they were not able to reach all of the claimants. When they were contacted they were asked if they were coming back to work. They were not asked why they were not returning, but some of the claimants volunteered the information that they were afraid to cross the picket lines to return to work for fear of being harmed. Most, but not all, of the claimants are members of the union which was striking against the employer. The labor dispute was ended on November 10, 1980. A few of *629 the claimants were asked to return to work after the strike, but most of them were not. The company is still not running at full capacity on three shifts at all locations as they were prior to the layoff on March 28, 1980."
After reviewing the law the referee said this in his opinion:
"The issues in this case are whether the work offered to the claimants was `new work', whether the work was suitable, and whether the claimants refusal of the work was for good cause.
"Although the employer contended at the hearing that all of the employees (including both those out on strike and those who had been laid off) were recalled for September 18, 1980 because the employer intended to restart operations on a full scale basis (three shifts at three locations), this is not borne out by the testimony. Even after the strike is over the plant is not operating at full capacity, and all of the workers have not been recalled to work. Therefore, it cannot be concluded that the work to which the claimants were being recalled was their old work. The jobs were only going to be vacant as a result of the fact that the workers with more seniority were out due to a labor dispute in progress at the places of operations.
"The claimants were not made aware when contacted of what jobs were being offered them, but the testimony at the hearing was that they would have been offered their same jobs at their same rates of pay. Therefore, the work that was available appears to have been suitable except for the fact that the positions were only available as a result of the labor dispute. Therefore, it is concluded that the claimants' refusal of the work was for good cause. They should not be disqualified for unemployment insurance benefits pursuant to the provisions of R.S. 23:1601(3)."
The Louisiana Board of Review affirmed the decision of the appeals referee without stating any additional reasons on February 9, 1981.
It thus appears that the appeals referee found as facts most, if not all, of the allegations contained in Vancouver's petition, except whether the employees were to be given back their old jobs and possibly the real reason for their failure to cross the picket lines and resume employment.
We have carefully reviewed the record and find that the only evidence on the first point is the testimony of the employer's representatives who said unequivocably that Vancouver intended to resume full production and planned to rehire each of the claimants on September 18, 1980, in his or her same position, on the same shift and at the same rate of pay. We do not attach any significance to the fact that after the strike was over on October 27 or 28, 1980, the plant was not operated at full capacity. The issue is whether the claimants were to be reemployed at their old jobs on September 18, 1980. None reported then to see what work was available. The referee's opinion that it was not their old work is based on mere speculation, not evidence sufficient in law to sustain his finding.
Nor do we consider to be of any significance the fact that some of the claimants were not told just what jobs they were to perform if they returned to work. Letters to resume employment on September 18, 1980, were mailed to all claimants and Vancouver attempted, but was unable, to contact many of them by telephone to furnish further information as to their reemployment. The only evidence on the subject is that they would have been given their old jobs had they gone back to work as requested.
The burden of proof is on the employee to establish that he comes within the exceptions to disqualification when he fails to accept an offer of available employment. Senegal v. Lake Charles Stevedores, Inc., supra; Amstar Corp. v. Gerace, 388 So.2d 1167 (La.App. 4 Cir. 1980). Certainly, the claimants have failed to establish that the work offered in this instance was "new work" and therefore unsuitable.
*630 In view of the claimants' refusal to cross the picket line and resume their former employment it is clear that they were disqualified for benefits during the strike under LSA-R.S. 23:1601(4) unless they established that they were not participating or interested in the labor dispute.
The record reflects that three and possibly four of the five claimants in these cases were non-union members. Even though they were initially laid off in March, 1980, they were still entitled to certain benefits such as the company pension plan, retention of their seniority status for one year and an opportunity to continue their group insurance benefits. They were considered to be within the bargaining unit that was represented by the union in negotiations with the company and they would benefit from any such negotiations if reemployed. Under these circumstances and Senegal, Cities Service and Amstar, supra, the claimants were interested in the labor dispute and therefore disqualified for unemployment benefits after September 18, 1980, by LSA-R.S. 23:1601(4). We do not have sufficient evidence, however, to determine whether or not the claimants once again became entitled to benefits after the labor dispute ended. We will remand the case for such determinations. Dyess v. Doyal, 341 So.2d 586 (La.App. 2 Cir. 1977).
For the foregoing reasons, the judgment of the district court is reversed and this case is remanded to the Louisiana Board of Review to grant relief to the plaintiff, Vancouver Plywood Co., Inc., in accordance with law and this opinion. Additionally, the board will determine whether or not the defendant, Wanda J. Bridwell, again became eligible for benefits after the strike ended.
REVERSED AND REMANDED.
NOTES
[1] The other cases are respectively numbered 8827, 8828, 8829 and 8830 and they are reported in 415 So.2d 630, 415 So.2d 631, 415 So.2d 631 and 415 So.2d 632.