459 So.2d 82 (1984)
James J. CHALIK, Appellee,
v.
Joseph GERACE, Administrator, Department of Employment Security of Louisiana, et al., Appellant.
No. 16517-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
*83 Ann M. Metrailer and Denise A. Nagel, Baton Rouge, for Caddo Office of Family Security.
James J. Chalik, in pro. per.
Before PRICE, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
The appellant, Caddo Parish Office of Family Security, appeals a trial court judgment which reverses the Board of Review for the Louisiana Office of Employment Security and awards the plaintiff, James A. Chalik, unemployment compensation benefits. We affirm.
Plaintiff voluntarily resigned from his job contending he was experiencing stress related health problems caused by an increased work load. The Office of Employment Security initially determined that plaintiff was eligible for benefits. Appellant appealed this decision and a hearing was conducted before an appeals referee. In a decision affirmed by the Board of Review, the referee reversed the agency determination and disqualified plaintiff from receiving benefits.[1] The transcript of the hearing before the appeals referee reveals the following uncontested facts:
Plaintiff was hired by appellant as an Eligibility Worker I on July 8, 1982. His primary duty apparently consisted of interviewing prospective foodstamp and aid to dependent children recipients to determine their eligibility. After attending a three week training course plaintiff was assigned a case load consisting of three foodstamp and one aid to dependent children applicants per day. He was informed that his case load would increase as he became more experienced.
Approximately three months after he was hired plaintiff's case load was increased to four foodstamp and two aid to dependent children applicants per day. At about the same time changes were implemented in the office reporting system which resulted in increased paperwork for all employees. When his case load was increased plaintiff was told that if he had any problems with the increased load he should talk to his supervisor.
A short time later plaintiff began experiencing severe headaches at the close of the working day. On October 20, 1982 at 8:30 a.m. plaintiff informed his supervisor, Mrs. Shirley Miller, of the problems he was having and requested time off to go to the doctor. Mrs. Miller approved the request. Plaintiff left work and did not return that day.
At approximately 7:30 p.m. the same day plaintiff called Mrs. Miller at home and told *84 her he had seen a doctor who informed him his headaches were due to stress associated with his increased work load. The doctor allegedly recommended that plaintiff either seek less stressful employment or take tranquilizers. After informing Mrs. Miller of the doctor's recommendations, plaintiff told her he thought it would be better for him to resign from his job because he did not feel he could properly perform his duties while taking tranquilizers. Mrs. Miller agreed that resignation was the better of the two alternatives and she asked plaintiff to submit a letter of resignation if he intended to resign. The following morning Mrs. Miller found a written resignation from plaintiff on her desk.
The appeals referee concluded:
The facts and testimony as presented at the hearing shows (sic) that the claimant resigned from his employment because he felt that it affected his health. No testimony was introduced showing that there had been a change in the conditions of the employment other than a gradual increase in the case load as any new worker will experience. Therefore, the claimant's leaving was not for good cause connected with the employment, and the determination of the Agency cannot be sustained.
In order to qualify for unemployment benefits an employee who voluntarily leaves his job must have done so with good cause and the cause must be connected with his employment. LSA-R.S. 23:1601(1); Cosby v. Lockwood, 395 So.2d 911 (La. App.2d Cir.1981); Wells v. Lockwood, 371 So.2d 1192 (La.App. 1st Cir.1979).
The scope of judicial review in appeals from decisions of the Board of Review is limited to a determination of whether the board's findings of fact are supported by sufficient evidence and whether, as a matter of law, the facts justify the action taken. LSA-R.S. 23:1634; Southeastern Louisiana University v. Shelton, 431 So.2d 432 (La.App. 1st Cir.1983); Harris v. Woodcrest Mobile Homes, 359 So.2d 243 (La.App. 2d Cir.1978).
Implicit in the findings of fact made by the appeals referee, and adopted by the Board of Review, are findings that: (1) If plaintiff would have discussed the problems he was having with his supervisor, steps would have been taken to relieve the situation; and (2) The increase in plaintiff's work load was not substantial enough to have been a major contributing factor in the stress he was experiencing. Neither finding is supported by the evidence.
In finding plaintiff could have obtained relief by talking to his supervisor, the referee ignored portions of plaintiff's and Mrs. Miller's testimony. According to plaintiff when he called Mrs. Miller after his visit to the doctor and informed her the doctor suggested he seek less stressful employment or take tranquilizers, Mrs. Miller did not suggest as an alternative that she would reduce the amount of work he was required to perform. Plaintiff states she agreed that resignation would be his best course of action. Mrs. Miller testified after plaintiff and was present during his testimony. She did not deny his version of the telephone conversation. The referee was, therefore, not faced with making a credibility call and should have accepted plaintiff's testimony as true.
We also note that Mrs. Miller equivocated when asked whether she would have offered plaintiff any relief from his workload if he had requested less work before he resigned. The referee specifically asked her if she would have decreased plaintiff's work load if he had told her of his problems. Mrs. Miller replied, "We can cut it back."
In finding plaintiff's health problems were not due to his increased work load, the appeals referee only considered the increase in the number of applicants plaintiff was required to interview each day. She ignored the increased paperwork brought about by the change in the reporting system. Plaintiff described the change as causing, "quite an additional work load" and as being, "quite a bit more complex." Plaintiff further indicated that the change was causing problems for other people in *85 the office. John H. Bradley, the Administrator for the Caddo Parish Office of Family Security, acknowledged that a change had been made in the reporting system and the totality of his testimony indicates the change created more work for those required to do it. He concluded his testimony by stating: "So the point I am making is changes are part of our business. We don't have the answer." We note that the case load was increased by one-third and this added work combined with the increased paperwork plaintiff was required to do fully support plaintiff's unrebutted testimony that there was a substantial increase in his work load.
The transcript of the hearing before the appeals referee reveals that in addition to plaintiff's unrebutted testimony concerning the stress brought about by the increased work load, the referee had before her two treatment forms from plaintiff's doctor and a form supplied by the Office of Employment Security filled out by the doctor.[2]
The first treatment form is dated October 20, 1981 which is the day plaintiff left work to go to the doctor. It states plaintiff's symptoms and indicates that plaintiff declined a prescription. The second treatment form is dated October 26, 1983 which is after plaintiff quit his job. It indicates that all tensions and associated pain had been resolved by that time.
On the form supplied by the Office of Employment Security the doctor states that plaintiff is having problems with his heavy work load and associated stress. The doctor indicates that he considered plaintiff unable to continue in his present job but he also stated plaintiff was able to return to work at a different job. The doctor recommends that if at all possible plaintiff is to avoid positions of stress.
Relying on the case of Dunigan v. Admin. of Dept. of Emp. Sec., 351 So.2d 807 (La.App. 1st Cir.1977) appellant argues this court cannot consider the medical information contained in the form supplied to plaintiff's doctor by the Office of Employment Security because it is incompetent hearsay evidence.
In reviewing cases arising under employment security law the courts should only consider legally acceptable evidence. Amstar Corp. v. Gerace, 388 So.2d 1167 (La.App. 4th Cir.1980); Evans v. State, Department of Employment Security, 292 So.2d 265 (La.App. 2d Cir.1974). The failure to object to inadmissible evidence constitutes a waiver of the right to complain on appeal about the admission of the evidence which could have been the subject of an objection. Moity v. Guillory, 430 So.2d 1243 (La.App. 1st Cir.1983); Belaire v. Vanderbrook, 405 So.2d 1143 (La.App. 1st Cir.1981).
Prior to taking testimony the appeals referee enumerated for the parties all of the documents offered as "Agency Exhibit Number One." The complained of agency medical report form was specifically included within the exhibit. Appellant was represented at the hearing by Bradley and Mrs. Miller; neither of whom objected to the admissibility of the medical report. Appellant, therefore, waived the right to complain about the consideration of this document in the appeals to the trial court and to this court. In the case of Harris v. Woodcrest Mobile Homes, supra, the trial court considered medical reports in the record in reversing the board of review's finding that plaintiff did not have just cause for leaving his employment. The medical reports in the record were considered by this court on appeal in affirming the trial court's award of unemployment benefits. We conclude the trial court properly considered the medical report contained in the record.
Appellant argues that plaintiff should be disqualified from receiving benefits because *86 on the form supplied by the Office of Employment Security the doctor states that plaintiff did not resign from his job on his advice. For authority appellant cites Cosby v. Lockwood, supra.
In Cosby the claimant who contended that extreme job pressures were adversely affecting his health did not seek medical treatment. Here, plaintiff sought medical help. While the doctor did not advise plaintiff to quit his job, he did recommend that plaintiff change jobs.[3] The doctor opined that the heavy work load was creating stress which should be avoided.
The plaintiff left his job because the increased work load caused stress which made him sick (headaches). The finding of the appeals referee and the board of review is not supported by sufficient evidence as there is no evidence that plaintiff left his job for any reason other than the stress induced by the increased work load. The trial court's finding that plaintiff left his employment for good cause connected with the employment is supported by the record. The judgment appealed from is
AFFIRMED.
NOTES
[1] The Administrator of the Office of Employment Security is deemed to be a party in proceedings for judicial review of the board's decision. LSA-R.S. 23:1634. The Administrator filed an answer to plaintiff's petition praying that the decision of the board be reversed.
[2] The claimant's unrebutted sworn testimony has been held to be sufficient evidence to support an award of unemployment compensation benefits. Trunkline Gas Co. v. Administrator, Dept., Etc., 364 So.2d 1365 (La.App. 3d Cir. 1978). See also Tucker v. Howes, 413 So.2d 585 (La.App. 1st Cir.1982) where the plaintiff's sworn testimony as to doctors visits was held to be sufficient evidence to establish that the visits occurred in a personal injury situation.
[3] The following questions and answers of plaintiff's doctor are quoted from the medical report secured from plaintiff's doctor by the Department of Employment Security:

1. What date did you consider the patient unable to work? 20 October.
2. Is the patient able to work at the present time? Yes.
3. What date did you release the patient as able to return to work? 20 Octoberat different job.
4. In your opinion is the patient able to perform his/her usual work? No. If unable to perform usual type work, to what type work is the patient restricted? Pt. having problems in heavy workloads and associated stress.
5. Did the patient resign from his/her employment on your advice? No.
6. Was the patient's illness effected by the conditions of his/her work? Yes. If so, did the conditions worsen the illness? Yes.
7. Was the patient's illness effected by a change in his/her working conditions? Yes. If so, did the change aggravate the illness? Yes.
8. If the patient is expecting a child, what is the expected date of birth? N/A.
9. If the work this individual was performing or was referred to is deemed, in your opinion, to be clearly hazardous to the health of the individual, please certify as to the specific hazards posed to the patient's health by the job: Pt. if at possible is to avoid positions of high stress.