WICKER, Judge.
Gaudin Equipment and Supply Company appeals a decision of the trial court which affirmed Dudley A. Stadler’s eligibility to receive unemployment compensation. The issue is whether Stadler left his employ *494 ment with Gaudin for good cause connected with that employment. We affirm.
Stadler began as an employee of Gaudin in 1970. He was given an option to purchase stock in the corporation and, at the time of his resignation, was a forty-five percent owner.
Although the reasons for the rift between Stadler and William Gaudin, the president and co-owner of the corporation, are contested, the result of the dissatisfaction was that Stadler resigned his position as vice-president and sales representative and sold his shares back to the company. Stadler then applied for unemployment compensation benefits under La.R.S. 23:1601. The Louisiana Department of Labor, Office of Employment Security, initially determined that Stadler was discharged without misconduct on his part and awarded him benefits. Gaudin appealed, resulting in a hearing before the appeals referee. The referee reversed the initial determination, finding that Stadler had voluntarily resigned his position. Stadler then appealed to the Louisiana Board of Review, which reversed and reinstated the original decision in favor of Stadler.
Gaudin responded by filing suit in district court against Stadler and the Department of Labor for review of that decision. The case was submitted on the record and memoranda; and the trial judge affirmed the Board of Review, finding, “[T]he record shows that the facts found by the Board are supported by sufficient evidence, and that the law was properly applied....” With regard to Stadler’s voluntary sale of stock back to Gaudin, the trial judge found,
[A]s a practical matter, Stadler’s ownership of stock and employment were somewhat intermingled. Nonetheless, under law the stock ownership and employment were distinct and separate legal relationships between Stadler and the corporation, neither of which depended on the other. The unemployment benefits to which Stadler is entitled derive entirely from his employment by the corporation, and therefore the sale of stock is irrelevant to this entitlement.
Gaudin complains that the trial court erred in four respects: (1) his finding that Stadler left his employment for good cause is unsupported in our jurisprudence; (2) his finding of good cause is inconsistent with the scope of “good cause” as a matter of law; (3) he misunderstood the significance of the stock redemption as evidence of a voluntary departure; and (4) he refused to recognize that the Board of Review abused its discretion by supplanting the findings of fact of the appeals referee with its own findings of fact. The Department of Labor argues that Stadler left his employment for good cause and that the facts justify the decision of the Board of Review. Stadler has not filed a brief.
The appeals referee was the initial fact finder, and both Stadler and William Gau-din testified at this hearing. Gaudin testified that there was a mutual agreement that the corporation should buy one or the other of them out; he also testified to, but could not produce, a letter from Stadler. That letter allegedly contained Stadler’s agreement to dissolve the partnership and a statement by Stadler that he would never be able to satisfy Gaudin. He testified that there was disagreement between him and Stadler about how the profits should be split after sales began to dwindle. He stated that Stadler was an equal partner and was never issued any ultimatums. He stated that if Stadler hadn’t agreed to resign and sell his stock back to the company, they would probably have liquidated the company. He testified he didn’t fire Sta-dler; he just dissolved the business relationship.
Stadler testified he left his employment because Gaudin was unhappy with what he was doing and was complaining about the amount of work he was doing. He testified that, as president of the company, Gaudin took all the best lines for himself. He stated that he worked hard, too. [At an earlier time, when he first made application for unemployment benefits, Stadler had alleged that he did his work to the best of his ability.] He claimed that he couldn’t have retired because he didn’t have the resources but had intended to go into business with some of the lines Gaudin had. *495 He stated he had received $35,000.00 for his stock in 1985 and was due to receive $34,000.00 the following year.
These transcript excerpts are fairly typical of the whole:
REFEREE: Okay. Did Mr. Gaudin ask you to resign?
CLAIMANT: Did he ask me to resign? No. He was the one that brought up the thing that we were very — he was very unhappy with the progress the company was making and he wanted to see me leave. I said, “Well, if you want to see me leave, why don’t you buy my stock?” And he did buy my stock.
REFEREE: Did he say he wanted to see you leave?
CLAIMANT: Yes. Sure he did.
REFEREE: In those words?
CLAIMANT: Sure he wanted to see me leave the company.
REFEREE: Is that what he told you.
CLAIMANT: No. He didn’t — but that was implied. I mean, he was fussing at me about the money I brought in and by the way, speaking about the amount of money, I just got to tell you that in 1984 his own figures say that he brought in fifty-four percent of the money, I brought in forty percent and the house was five point seven percent. That was his figures that he kept. But I went through the detail profit sheets and I rearranged the profit sheets in the way that I saw them and he got forty-five point nine percent, forty-seven point seven percent — forty-seven point five percent for me and the house had six and a half percent. So he saw the profit sheets a little bit different that I saw them. And it’s not true that I didn’t produce any profit.
REFEREE: Did he ask you to resign?
CLAIMANT: No. He did not ask me to resign. He did not say, “Dudley, will you resign?” But it was understood that I was going to have to leave if he owned the company.
REFEREE: You were a partner in the company as well?
CLAIMANT: I owned forty-five percent of the stock. He owned forty-five percent and his sister owned ten percent.
REFEREE: Anything else? Do you have any questions of Mr. Gaudin?
CLAIMANT: Nope. I don’t want to talk to him.
[[Image here]]
GAUDIN: We were two guys who were in business together and the business started to fail and we were a corporation — we are a corporation and the corporation bought Mr. Stadler’s stock out. And if he says he didn’t tell me this, well, that’s his say so. But he told me sitting there. I said, “Dudley, what are you going to do?” And he said, “I’m going to retire.”
CLAIMANT: How the hell could I retire?
GAUDIN: I don’t know. That’s—
CLAIMANT: I mean, I got sixty-four thousand dollars, Bill. How the hell I’m gonna retire on sixty-four thousand dollars?
GAUDIN: I’m just telling you what you told me there, that’s all.
The Unemployment Compensation Act outlines the reasons for which a claimant can be disqualified from receiving benefits:
La.R.S. 23:1601(1) If the administrator finds that he has left his employment ... without good cause connected with his employment....
La.R.S. 23:1601(2) If the administrator finds that he has been discharged ... for misconduct connected with his employment. ...
Other listed reasons are not applicable to the facts of Stadler’s case. The Act also provides several levels of review of an initial determination regarding eligibility.
La.R.S. 23:1629. [T]he appeal tribunal, after affording the parties reasonable opportunity for a fair hearing, shall make findings and conclusions and on the basis thereof affirm, modify, or reverse the determination.
La.R.S. 23:1630. Upon review on its own motion or upon appeal, the board of review may, on the basis of the evidence *496 previously submitted in such case, or upon the basis of such additional evidence as it may direct be taken, affirm, modify or reverse the findings and conclusions of the appeal tribunal.
La.R.S. 23:1634.A. [T]he administrator, or any party to the proceedings before the board of review, may obtain judicial review thereof by filing in the district court of the domicile of the claimant a petition for review of the decision....
B. In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.... An appeal may be taken from the decision of the district court to the circuit court of appeal in the same manner, but not inconsistent with the provisions of this Chapter....
Our role then is to take the findings of fact of the board of review, unless these facts are unsupported by the evidence or there is fraud, and apply to them the law. La.R.S. 23:1634 B; Dawkins v. Sumrall, 424 So.2d 407 (La.App. 2d Cir.1982).
The Board of Review considered the evidence in the record, as it is empowered to do, and reached different findings and conclusions from those of the appeals referee:
After carefully reviewing the testimony, evidence and records in this case, the Board finds that the claimant was a minority stockholder and was being pressured to sell more of the company’s products. The claimant was doing his best to produce all he could, but was hampered by economic conditions. His partner’s continual dissatisfaction with his production resulted in his leaving.
The Board found good cause in Stadler’s leaving.
Our review must be always cognizant that “[t]he Louisiana Employment Security law is remedial social legislation. It is to be construed liberally and in the interest of the statute’s beneficiaries.” Parker v. Gerace, 354 So.2d 1022, 1025 (La.1978) (citations omitted).
The purpose of the various disqualification provisions found in the law governing unemployment compensation “is to make sure that compensation is not paid to those who choose not to work, that the compensation law does not encourage idleness, and that it does not weaken the willingness of the individual to provide for himself through employment.” Algiers Homestead Association v. Brown, 246 La. 738, 167 So.2d 349 (1964).
Craighead v. Administrator, etc., 420 So.2d 688, 689 (La.App. 2d Cir.), writ den. 422 So.2d 154 (La.1982).
The real dispute in this case is whether Stadler’s cause for leaving was job-connected.
[Gjood cause connected with one’s employment ... means cause connected with working conditions, ability of the employee to continue the employment, availability of transportation to and from work, and other factors which affect the employee’s ability or right to continue work or which affect the benefits he may receive from his employer either upon continuation of work or retirement.
McGraw v. Director of Postal Data Center, 319 So.2d 797, 799 (La.App. 1st Cir. 1975). Accord: McDonald v. Lockwood, 424 So.2d 356 (La.App. 2d Cir.1982). We believe that a significant change in one’s working conditions is sufficient good cause, although we have not been cited to any case which is factually analogous to the instant one. In Chalik v. Gerace, 459 So.2d 82 (La.App. 2d Cir.1984), for instance, the prevailing claimant offered satisfactory proof that the increased stress of his job made him physically ill. In Buckley v. State, Dept. of Employment Sec., 383 So.2d 52 (La.App. 2d Cir.1980), which was relied upon by the trial judge, the claimant was subjected to unbearable harassment, discrimination, and unfairness.
Nevertheless, we hold that the Board of Review’s factual determination was based upon sufficient competent evidence. The change in working conditions charged by Stadler and found by the Board of Review, consisting of pressure to sell more, adverse economic conditions, and *497 Gaudin’s continual dissatisfaction, constitute the requisite “good cause connected with [his] employment.” We decline to disturb the decision of the trial judge and affirm. Gaudin Equipment and Supply Company must pay the costs of this appeal.
AFFIRMED.