482 So.2d 940 (1986)
Harry J. HYPOLITE, Plaintiff-Appellee,
v.
Cecil BLACHE, Administrator For the Division of Employment Security of the State of La., et al., Defendants-Appellants.
No. 84-966.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
Writ Denied March 31, 1986.
*941 Onebane & Assoc., Robert W. Daigle, Lafayetee, for defendants-appellants.
Sidney P. Landry, Jr., Lafayette, for Plaintiff-Appellee.
Denise A. Nagel, Baton Rouge, for defendant-appellee.
Before DOMENGEAUX, LABORDE and KING, JJ.
LABORDE, Judge.
This is a suit for judicial review of an administrative agency denial of unemployment benefits. The Office of Employment Security for the Louisiana Department of Labor (the Department) decided that the claimant, Harry J. Hypolite, was ineligible to receive unemployment benefits because he had been discharged for misconduct connected with his employment. LSA-R.S. 23:1601(2). The Department's determination was affirmed by an appeals referee and reaffirmed by the board of review.
The district court reversed the board of review, ordering the defendant administrator to pay unemployment benefits to Hypolite. Hypolite's employer, Martin Mills, Inc., appeals the decision of the district court. The Department prays that the judgment be affirmed. We affirm.
Pursuant to LSA-R.S. 23:1634, the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, are conclusive and the jurisdiction of the district court is confined to questions of law.[1]Vancouver Plywood Company, Inc. v. Sumrall, 415 So.2d 625, 628 (La.App.3d Cir.1982). There is no allegation of fraud, and our review of the record convinces us that the appeals referee's findings of facts are supported by sufficient evidence. We must therefore determine whether, in light of the established facts, the district court erred in concluding as a matter of law that the claimant is entitled to unemployment compensation benefits.
We accept as conclusive the appeals referee's findings of fact, which are reproduced below:
"The claimant worked for this employer from May 13, 1974, to October 11, 1982, as a knitter, earning $6.02 per hour. His pay was based on an hourly rate, plus production. He was scheduled *942 to work from 7:00 a.m. to 3:00 p.m., Monday through Friday, or during the latter part of his employment as scheduled. During his employment, the claimant had been counseled on several occasions in regards to his failure to meet his production quota. He was told a primary factor was because he did not keep the machines assigned to him clean and this caused them to stop automatically and this would slow down his production. During the latter part of claimant's employment, the supervisor in charge of claimant's unit spent a considerable amount of time with the claimant in order to try to salvage him, as he was considered as having good potentials [sic]. The claimant was told on many occasions by Mr. Lee to keep his machines properly cleaned. During the last two weeks of claimant's employment, Mr. Lee was off work due to surgery, and Mr. Thomasee, the substitute supervisor, suspended the claimant for three days for failing to meet production. On his last day of work the claimant was given specific instructions at approximately 10:00 a.m. to clean his assigned machines that day. At about 3:00 p.m. Mr. Thomasee noticed that the claimant had not cleaned the machines. The claimant maintained at the hearing that he had not done so because he was trying to meet his production quota. The claimant reported for work the next morning and was informed by Mr. Thomasee that he was being discharged from the employment for failing to clean the machines as instructed and failing to meet production quotas."
It is apparent that, on the day prior to his discharge, claimant Hypolite was facing what he perceived to be a no-win situation. Shortly before the incident immediately precipitating his discharge, he had been suspended from work for failing to meet his production quota. Fearing another suspension, claimant resisted his substitute supervisor's directive, intending thereby to serve Martin Mills' broader interest producing cloth material. The incident no doubt gave Martin Mills grounds (though none are needed; La.Civ.Code art. 2747) for dismissing the claimant. But the word "misconduct" in LSA-R.S. 23:1601 is used to connote intentional wrongdoing. Thus, an employee can be unsatisfactory to the employer without being guilty of disqualifying misconduct. Banks v. Administrator of Dept. of Employment, 393 So.2d 696 (La.1981).
An employee's failure to follow a direct order of his supervisor can constitute misconduct under LSA-R.S. 23:1601(2) which would disqualify claimant from receiving unemployment compensation benefits. And we recognize the employer's argument that, had claimant Hypolite stopped to clean his machine per the supervisor's instruction, the productivity of the machine would, in the long run, have been enhanced. Nonetheless, the facts do not portray an employee engaged in deliberate conduct intended to harm his employer's interests. We distinguish this case from those involving, for example, an employee habitually engaged in disruptive behavior which slows down his and his coworkers' production efforts. See, e.g., Cole v. Doyal, 195 So.2d 759 (La.App.3d Cir.1967); Black v. Sumrall, 413 So.2d 252 (La.App. 4th Cir.1982).
We accept as a matter of fact that claimant did fail to follow a direct order of his supervisor, but note that claimant deemed his course of behavior necessary under the circumstances to comply with what he perceived as a superseding responsibility. Erroneous or not, the claimant's decision not to immediately clean his machine was an exercise of poor judgment, not an act constitutive of misconduct as the word has been consistently construed.
We are guided to our conclusion in part because the Department, through its Office of Employment Security, pleaded in its answer to claimant's petition to the district court that the decision of its own board of review be reversed. When the board of review was reversed, the Department did not appeal.
*943 For the above and foregoing reasons, the judgment of the district court is affirmed at the cost of appellant Martin Mills, Inc.
AFFIRMED.
DOMENGEAUX, J., concurs and assigns reasons.
KING, J., dissents for written reasons assigned.
DOMENGEAUX, Judge, concurring.
There are equities in this case favoring the appellant. However, these equities standing alone would not ordinarily justify a reversal by the district court of the decision of the Appeals Referee and Board of Review.
I will agree with our affirmation herein but only on the basis that the Administrator of the Office of Employment Security, a defendant herein, unequivocally prayed in its Answer in the district court that the decision of the Board of Review be reversed.
For this reason I respectfully concur.
KING, Judge, dissenting.
I respectfully dissent.
The undisputed facts, as found by the majority, show that the plaintiff, an employee in a carpet mill, was discharged because of his deliberate disobedience of a direct order from a superior to stop his knitting machine and clean it.
Plaintiff, as reflected by the Appeal Referee's findings of fact which were accepted as conclusive by the majority (and quoted in full in the majority opinion), had been reprimanded on prior occasions regarding his failure to meet his production quotas. Plaintiff had been previously told that the primary reason for his failure to meet his production quotas was his failure to keep his machine properly cleaned. The machine would stop automatically when not kept properly cleaned. During the last two weeks of his employment plaintiff had been suspended for three days for failing to meet his production quotas. On the last day of employment plaintiff was directly ordered early in the morning by his supervisor to stop and clean his machine and plaintiff had failed by late afternoon to obey this direct order. Plaintiff was discharged for his failure to stop and clean his machine as ordered.
The majority states that:
"We accept as a matter of fact that claimant did fail to follow a direct order of his supervisor, but note that claimant deemed his course of behavior necessary under the circumstances to comply with what he perceived as a superceding responsibility. Erroneous or not, the claimant's decision not to immediately clean his machine was an exercise of poor judgment, not an act constitutive of misconduct as the word has been consistently construed."
Judge Laborde further finds that "Nevertheless, the facts do not portray an employee engaged in deliberate conduct intended to harm his employer's interest." I disagree. As Judge Laborde himself has previously recognized, "When there is a deliberate violation of an employer's rule by an employee, there is `misconduct.' Under this standard, protection of the employer's interest plays no part. The employee's action is misconduct merely by deliberate violation of the employer's rule." Williams v. Adm'r. of Office of Emp. Sec., 474 So.2d 544, at page 545 (La.App. 3rd Cir.1985). If this is true with respect to an employer's rule it is certainly even more so with respect to an employer's direct order. What the plaintiff perceived to be his responsibility is not the test of misconduct.
Plaintiff's responsibility as an employee was to follow the direct orders of his supervisors and not to second-guess these orders. Plaintiff was clearly aware of the fact that properly cleaned machines were necessary in order to meet production quotas. Plaintiff's immediate supervisor ordered him to clean his machine so that he could maintain his productivity. Plaintiff's failure to follow this direct order constituted intentional wrongdoing, and his actions were harmful to his employer's interest *944 which was to maintain the productivity of its employees.
In the event that plaintiff's action of disobeying a direct order of his employer is sanctioned by the Court in this case, there will never again be an act of misconduct because of an employee's failure to follow the direct order of a superior. No employee will ever admit misconduct connected with employment while at the same time claiming unemployment compensation benefits. The discharged employee will always claim that he thought he should disobey the direct order of his superior because he thought that by doing so he would serve his employer's greater interest. The state of mind of an employee would always depend on the employee's subjective intent which could never be disproved. Every employee upon being fired for failure to obey a direct order would then make such a claim which could not be disproved.
The law is that misconduct connected with employment is a sufficient basis to deny unemployment compensation benefits. A deliberate failure to follow an order, for whatever reason, is willful misconduct on the part of the employee. Louisiana law has long recognized that an employee's failure to follow a direct order of his employer constitutes misconduct which disqualifies the employee from receiving unemployment compensation benefits. See e.g. Melton v. State, Office of Employment Sec., 473 So.2d 925 (La.App. 3rd Cir. 1985); Honea v. Blache, 469 So.2d 464 (La.App. 3rd Cir.1985); Giss v. Sumrall, 409 So.2d 1227 (La.App. 2nd Cir.1981); Bowman v. State, Office of Employment Sec., 403 So.2d 825 (La.App. 2nd Cir.1981); Jackson v. Doyal, 198 So.2d 469 (La.App. 2nd Cir.1967); Ross v. Holiday Inn, 191 So.2d 335 (La.App. 3rd Cir.1966). The employee's failure to obey an order is misconduct because an employer would not give a direct order to the employee in connection with work unless it is for the purpose of furthering the employer's business. Certainly the employer should be the one entitled to make the decision as to what furthers his business rather than each of his individual employees. If each employee could make such a decision, then who will be in control of managing the business?
Judge Domengeaux acknowledges in his concurring opinion that there are equities in the case favoring the employer. I agree. He further states that these equities standing alone would not ordinarily justify a reversal by the district court of the decision of the Appeal Referee and Board of Review. I agree. However, Judge Domengeaux concurs in such reversal solely on the basis that the Administrator of the Office of Employment Security, one of the defendants herein, had prayed in its answer to the plaintiff's judicial appeal that the decision of the Board of Review be reversed. I disagree. The wishes or recommendations of a party to a lawsuit should never be the sole reason for the rendition of a decision. This very same conduct by the Administrator has been previously rejected as a basis for a decision on judicial appeal of an unemployment compensation case to the Courts. See Wyre v. Lockwood, 402 So.2d 164 (La.App. 1st Cir.1981), writ den., 404 So.2d 1260 (La.1981).
I submit that the position now taken by the Division of Employment Security of the State of Louisiana in the judicial appeal to the courts of this State is repugnant and inappropriate and should not be a reason to form the sole basis for affirmation of a decision especially where the law and equities are in favor of the employer.
The Division had two opportunities, once before its Appeal Referee and again before its Board of Review, to reverse its initial determination denying unemployment compensation benefits to the plaintiff. Yet it chose not to do so as both its Appeal Referee and its Board of Review maintained its initial determination denying benefits. The Division should not now be permitted to appear in court and claim that its own administrative procedures were in error when it had ample opportunity during the administrative appeal process to itself administratively correct its own error. To permit such action in the courts places the Division in the repugnant position of asking *945 the court to render a decision, which it now judicially admits that it should have rendered itself, but which it admits it failed to give administratively. One purpose of administrative appeals is to permit the Division to review its own actions and to correct its own mistakes. Such action by the Division should not be permitted if for no other reason than it is inappropriate and wastes the time and resources of both the Division and the Courts in the appeals process, incurs needless expense and inconvenience for all parties, and admits the Division's own inadequacy to properly perform its duty.
For these reasons I strongly disagree and dissent from the majority and concurring opinion affirming the trial court's reversal of the Division's initial and subsequent determinations that the plaintiff was not entitled to unemployment compensation benefits.
NOTES
[1] The board of review in this case did not make independent findings of fact, but rather adopted those of the appeals referee.