488 So.2d 1126 (1986)
Bobby D. PIXLEY, Plaintiff-Appellant,
v.
Cecil J. BLACHE, Administrator, Louisiana Office of Employment Security, Defendant-Appellee.
No. 17765-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1986.
E. Paul Young, Mental Health Advocacy Service, Shreveport, for plaintiff-appellant.
Ann M. Metrailer, Baton Rouge, for defendant-appellee, Louisiana Tech University.
Denise A. Nagel, Baton Rouge, for defendant-appellee, State of La., Dept. of Labor.
Before HALL, Fred W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
This is a suit for unemployment compensation benefits. Plaintiff-appellant, Bobby D. Pixley, applied for benefits after being discharged from his job at Louisiana Tech University in Ruston. The claims adjudicator, the appeals referee, and the Board of Review all denied his claim for benefits. *1127 The district court affirmed the decision of the board and denied plaintiff's claim for benefits. We reverse.

FACTS
The plaintiff worked for Louisiana Tech University in the Division of Administration in the Office of Handicapped Services as a Nursing Aid I from September 16, 1982 until his termination on October 14, 1982. As part of a special program, the University housed ten severely disabled students with spinal cord disorders and provided special training and clinical supervision for these individuals twenty-four hours per day. The University employed plaintiff and six others under one supervisor to care for the students. When plaintiff was hired he was told he would be trained to care for the students and, in addition, he would be trained to drive a specially equipped van to transport the handicapped students. The van cost approximately $25,000 and employees were required to be trained approximately eight to ten hours in order to learn how to operate the van properly. Employees were required to pass two levels of competence in handling the van before being allowed to drive a student in it.
On October 9, 1982, after having only an initial demonstration of the vehicle, plaintiff drove the van to pick up some food for the students. On his way back, the plaintiff also proceeded to a Safeway store to pick up some other items requested by the students. The next day Dr. John Schweitzer, coordinator of Handicapped Services, discussed the incident with the plaintiff and advised him he should refrain from operating the van until he had been properly trained and had proper authorization to use the van. At this time Dr. Schweitzer also discussed plaintiff's calling the Office of Vocational Rehabilitation in Monroe, Louisiana, and making recommendations for the program as if he were representing the employer. Dr. Schweitzer warned the plaintiff that such calls were inappropriate.
Two days later, on October 12, 1982, plaintiff missed a four-hour shift of work without notifying his employer. The plaintiff testified that he missed work in order to go to Baton Rouge to visit the Department of Education, Civil Service Commission, and the Attorney General's office. Plaintiff indicated he felt this trip was necessary so that he could determine what his legal rights were concerning rumors he had heard from staff members and students that he had been accused of sexually molesting one of the students in the program.
Plaintiff left for Baton Rouge after he got off work at 11:00 p.m. on the night of October 11, 1982, and since he was not scheduled to report to work until 7:00 p.m. the next day, he felt that he had sufficient time to make the trip and return to Ruston in time for work the next evening. However, plaintiff's business took longer than expected, and he was unable to report for work at the stated time. Plaintiff stated he tried to call his employer around noon on October 12th to advise his employer that he might not be able to make it back in time, but did not receive an answer. Plaintiff admitted that he did not try to call his employer again. The only other effort plaintiff made to notify his employer was to leave a message on his answering machine stating that he had gone to Baton Rouge on some official business and would try to be back in time to report to work.
When plaintiff returned to work on October 14, 1982, he was given notice of his immediate termination by Dr. Schweitzer. Dr. Schweitzer advised the plaintiff he was being discharged due to his unreliability, bad judgment, failure to report to work without notifying the employer, and for unauthorized use of the van.
Plaintiff then filed a claim for unemployment compensation and was disqualified from receiving benefits. He appealed the disqualification to the Appeals Tribunal, and a hearing was conducted on January 12, 1983.
The appeals referee concluded that the facts and testimony showed that plaintiff was terminated because of unauthorized use of the van and absenteeism. The referee determined that plaintiff's actions constituted *1128 misconduct connected with employment. Consequently, plaintiff's disqualification for benefits was affirmed. Plaintiff appealed to the Board of Review, which also affirmed the appeals referee's decision.
Plaintiff then filed a petition for judicial review of the board's conclusion. The trial court found that there was sufficient, legal and competent evidence to support the referee's findings of unauthorized use of the employer's van and absenteeism without prior notification to his employer. The trial court then determined that these actions were sufficient to constitute disqualifying misconduct connected with employment, and thus denied plaintiff's claim for benefits. From this judgment, plaintiff appeals.
The scope of judicial review in appeals from decisions of the Board of Review is limited to a determination of whether the board's findings of fact are supported by sufficient evidence and whether, as a matter of law, the facts justify the action taken by the board. LSA-R.S. 23:1634; Charbonnet v. Gerace, 457 So.2d 676 (La.1984); Chalik v. Gerace, 459 So.2d 82 (La.App.2d Cir.1984).
No complaint regarding the correctness of the board's factual findings has been made on appeal. Because the factual findings of the board are not alleged to be tainted with fraud or supported by insufficient evidence, such findings are deemed to be conclusive, and thus, this court is obligated to accept them. LSA-R.S. 23:1634; Dawkins v. Sumrall, 424 So.2d 407 (La. App.2d Cir.1982). Therefore, the only issue is whether the factual findings in this case legally justified plaintiff's disqualification due to misconduct connected with the employment.
LSA-R.S. 23:1601(2) provides in pertinent part that an individual shall be disqualified from benefits "... for misconduct connected with his employment."
Misconduct has been defined by the jurisprudence as an intentional wrongdoing or an act of willful or wanton disregard of the employer's interest, a deliberate violation of the employer's rules, disregard of standards of behavior which the employer has a right to expect, or negligence in such a degree or recurrence as to manifest culpability, wrongful interest, or evil design. Charbonnet v. Gerace, supra; Sampson v. Administrator, Louisiana Office of Employment Security, 439 So.2d 458 (La. App.2d Cir.1983), writ denied 443 So.2d 596 (La.1983); Dorsey v. Administrator, Louisiana Department of Employment Security, et al., 353 So.2d 363 (La.App. 1st Cir.1977), writ denied, 355 So.2d 549 (La.1978); Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App.3d Cir.1976).
Plaintiff submits that his single isolated use of the van for the sole benefit of the handicapped students whom plaintiff was hired to assist does not meet the standard of willful, wanton and intentional disregard of the employer's interests so as to constitute disqualifying misconduct.
The trial court found that plaintiff's single unauthorized use of the van constituted misconduct connected with employment. The trial court based this conclusion on the elaborate training procedure set up by the employer which stressed the importance of having only personnel drive the van who were sufficiently trained. The court found plaintiff's action in driving the van before he was authorized to do so a deliberate violation of the employer's rules constituting misconduct connected with the employment. We find that the trial court, as well as the Board of Review, were clearly wrong in this conclusion.
The trial court was correct in stating that a single rule violation may constitute misconduct. However, the deliberate violation of a rule by an employee does not automatically classify that action as misconduct. One must look to the nature of the violation, giving due consideration to the factors which enter into the proper conduct of the employer's work or business. Jackson v. Doyal, 198 So.2d 469 (La.App.2d Cir.1967). For example, it has been held that an employee's failure to follow a direct order of his supervisor did *1129 not constitute misconduct because the employee's intent in violating the order was to serve the employer's interest as a whole. Hypolite v. Blache, 482 So.2d 940 (La. App.3d Cir.1986).
Accepting the board's factual finding that plaintiff used the van without receiving proper authorization, we find that plaintiff's behavior did not constitute actionable misconduct. Plaintiff drove the van only in response to one of the student's request for food. No supervisor was present at the time, so there was no opportunity for plaintiff to obtain approval to operate the van. After operating the van, plaintiff was later reprimanded by Dr. Schweitzer about driving the van without the proper authorization. After this warning by Dr. Schweitzer, no further incidents concerning unauthorized use of the van occurred. These facts do not portray an employee engaged in conduct intended to harm his employer's interests. While plaintiff's use of the van was unauthorized and thus misguided, it can be said that his motives appear pure and was, in his way, attempting to further his employer's interest.
Plaintiff also argues there is no evidence to show that he acted out of wanton, wilful disregard for his employer's interests such that his single absence from work should be found to constitute disqualifying misconduct. Plaintiff argues there is absolutely no evidence whatsoever to show that he was acting in any state of mind other than in a good faith, if somewhat misguided effort to resolve a potentially devastating blow to his career and social standing in the community when he was unintentionally absent from work without permission.
The trial court found plaintiff's single absence from work sufficient to constitute misconduct connected with employment. The trial court noted that plaintiff tried to contact his employer at lunch time to report that he would not be present for work that evening. The court reasoned that it was customary for offices to be closed at lunchtime and, therefore, it was unlikely that the plaintiff would have been able to reach the employer at this time. The court reasoned that since plaintiff called his employer only once at a time when it was unlikely that anyone would be there to receive such a call, that this incident fell within the realm of Ware v. Brown, 147 So.2d 455 (La.App.2d Cir.1962), and, therefore, plaintiff was guilty of misconduct.
In Ware, this court held that an employee who failed to report for work one day without timely notifying his employer of his intended absence as required by the rules of the company was guilty of misconduct and not entitled to unemployment compensation benefits. The employee in that case admitted that he telephoned his employer's office only one time and that he knew that the office was not customarily open at the hour he called.
Since the time of its rendition, Ware has been modified by later expressions of this court. As we noted in Gunderson v. Libbey Glass, 412 So.2d 656 (La.App.2d Cir. 1982), although an absenteeism may justify termination of an employee, it does not necessarily follow that the absenteeism is automatically disqualifying misconduct. It is the lack of any prior unexcused or unexplained absences, particularly in the face of warnings by the employer or chronic absence without notice and permission which amount to willful misconduct sufficient to preclude an employee from unemployment benefits. Gunderson, supra; Goff v. Administrator of Division of Employment Security, 157 So.2d 268 (La.App.3d Cir. 1963).
Recently, in Carter v. Blache, 476 So.2d 873 (La.App.2d Cir.1985), we held that denial of unemployment benefits due to one unexcused absence and failure to timely notify the employer of the absence was not justified because, under the circumstances, evidence on the issue did not establish sufficient wrongful intent to amount to disqualifying misconduct.
We therefore conclude that plaintiff's actions, when considered separately or as a whole, do not constitute the actionable misconduct intended by LSA-R.S. 23:1601(2).
*1130 The evidence received below while establishing plaintiff's poor judgment, inability to appropriately cope with some situations, and occasional incidents of failure to precisely follow instructions, although giving the employer sufficient reason for termination of the employee, do not constitute the kind of willful and deliberate misconduct amounting to a willful or wanton disregard of the employer's interest sufficient to disqualify the claimant from receiving unemployment benefits.
For the foregoing reasons, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that the Board of Review of the Division of Employment Security, Division of Labor, State of Louisiana, issue an order directing the payment to plaintiff of the unemployment compensation benefits to which he is entitled under the Louisiana Employment Security Law. The employer, Louisiana Tech University, is cast for all costs of this appeal.
REVERSED AND RENDERED.