516 So.2d 1323 (1987)
In re Judicial Commitment of C.P.K.
No. 19502-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
Mental Health Advocacy Service by E. Paul Young, Shreveport, for appellant.
Joe Cusimano, Jr., Farmerville, for appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The respondent, C.P.K., was found to be suffering from mental illness and subjected to a judgment of involuntary judicial commitment. The issue is whether the trial court should have appointed an attorney from the Mental Health Advocacy Service to represent the respondent, C.P.K. We conclude that the trial court's failure to do so was error, so we reverse and remand the case with instructions.
The respondent's father filed the petition on May 15, 1987. Pursuant to the statute,[1] the district court for Lincoln Parish signed an order appointing two physicians to examine C.P.K. and to submit written reports. The order also appointed counsel to represent C.P.K. The matter proceeded to a hearing on May 26. C.P.K.'s parents, who were by then also represented by counsel, testified; C.P.K.'s appointed counsel cross-examined them. C.P.K. himself also testified and was cross-examined. The only other evidence consisted of three sealed medical reports.[2] The trial court concluded that C.P.K. was suffering from mental illness and ordered him committed to Central Louisiana State Hospital in Pineville.
C.P.K.'s parents testified to some erratic behavior on their son's part, like switching on the kitchen vent to ward off spaceships that were hovering over the house and camping out in his car, refusing to take the medicine that had been prescribed for him during two previous voluntary confinements. The parents mostly complained about his sudden outbursts of temper and great aggressiveness toward them. C.P.K. testified, however, that the spaceship incident *1324 occurred while he was "messed up" with marijuana. He resolutely denied any hostility, aggression or threat of danger to his parents. He is a 1977 graduate of LSU law school. The medical reports confirmed that C.P.K. has a serious marijuana habit. Dr. Douglas's report concluded that he would be dangerous to others if provoked because of his paranoia; this report recommended involuntary confinement and treatment. Dr. Ware's report diagnosed "probable hypomanic episode in bipolar disorder" or "possible schizo-affective disorder" and recommended judicial commitment for longer term treatment. Dr. Gray's report did not make a diagnosis but referred to a "life long mental illness."
Judicial commitment is a sufficient deprivation of personal liberty to activate the respondent's due process rights. Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Louisiana's Mental Health Law recognizes this and provides for the assistance of counsel at every critical stage of the proceedings. LSA-R.S. 28:54 C. To facilitate this right, the statute created the Mental Health Advocacy Service. LSA-R.S. 28:64. Its purpose is to provide legal counsel and representation for mentally disabled persons who cannot hire counsel and to assure that their legal rights are protected. LSA-R.S. 28:2(13), 28:64.
The portion of the Mental Health Law pertaining to commitment for mental illness[3] expresses a uniform and overwhelming preference for the respondent's counsel to be appointed from the Mental Health Advocacy Service if respondent is indigent or unable to retain his own counsel. LSA-R.S. 28:54 C makes this right the subject of notice requirement at the initial stage of the proceeding:
* * * The notice shall inform such respondent that he has a right to be present at the hearing; that he has a right to counsel; that he, if indigent or otherwise qualified, has the right to have counsel appointed to represent him by the Mental Health Advocacy Service * * *.
The transcript of this case does not show that this notice was ever served on respondent.
At the judicial hearing, the respondent must be represented by counsel. LSA-R.S. 28:55 C provides:
* * * All respondents must be represented by counsel as early as possibly [sic] in every proceeding. If attorneys are available through the mental health advocacy service, the court shall contact the office of the service and request the assignment of an attorney who will be appointed. * * * (emphasis added)
The record does not reflect that the trial court inquired about the availability of the Mental Health Advocacy Service, even though the statute plainly requires it and even though the Service was indeed available. We think both the letter of the law and the spiritto provide respondents with counsel specially qualified for the intricacies of mental health lawwere violated by the trial court's failure to use the Service. This undermined the respondent's right to have the level of service contemplated by the statute.
The appellee asserts two grounds for upholding the trial court's action. First, he claims that because the respondent was indeed represented by appointed counsel at trial, then the spirit of the law was honored and any error in failing to use the Service was harmless. However, the law of judicial commitment is special and unfamiliar to many practitioners, and for this reason the legislature has expressed the intent that cases should usually be handled by attorneys more versed in the unique features of the statute. The necessity of special representation is underscored by the expeditious nature of commitment proceedings. *1325 Because of this urgency, the legislature was justified in entrusting the cases to counsel who might act without delay. The statute has special provisions for subpoenaing the physicians, LSA-R.S. 28:55 D, and for least restrictive treatment, LSA-R.S. 28:55 E, but neither of these points was ever argued at the trial of the instant case. C.P.K. was entitled to these and other benefits conferred by the statute.[4] He was especially entitled to instructions on alternatives for least restrictive confinement. See O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); In the matter of L.M.S., 476 So.2d 934 (La.App. 2d Cir.1985). For these reasons, and despite the competent efforts of appointed counsel, we cannot say that failure to comply with the statute was harmless error.
The appellee next urges that the trial court should be excused from inquiring about the availability of the Service since it did not know from the statute whether the Service really existed. This argument is untenable because the statute enjoins the trial court to inquire and, if it had done so, it would have been informed that the Service is in operation. Furthermore, the Service has previously participated in a case from this judicial district. Pixley v. Blache, 488 So.2d 1126 (La.App. 2d Cir. 1986).
For the reasons expressed, the judgment of the trial court is reversed and the case is remanded for a new hearing in accordance with law and within the time delays prescribed by LSA-R.S. 28:54 C. Respondent shall be represented by counsel from the Mental Health Advocacy Service. Because appeal from a judgment of commitment is devolutive only, respondent is to remain in the custody of the Central Louisiana State Hospital pending the outcome of the hearing. LSA-R.S. 28:56 D. Costs of appeal are assessed to appellee.
REVERSED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] LSA-R.S. 28:54 D.
[2] In addition to the two reports ordered by the trial court, there was a report from Dr. Ware, psychiatric director at E.A. Conway Memorial Hospital.
[3] This portion of the statute is called "Part III: Examination, Admission, Commitment, and Treatment of Persons Suffering from Mental Illness and Substance Abuse." LSA-R.S. 28:50-64.
[4] Failure to subpoena and cross-examine the physicians could have affected the outcome of the case. Admittedly, C.P.K.'s testimony was somewhat disjointed and rambling, but Dr. Douglas could have been asked to explain his finding of "marked delusional content of thoughts and significant paranoid ideation." A prosecuting attorney would probably object to admitting a medical report which declares a defendant insane without first being permitted to cross-examine the physician who submitted the report.